# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | **C.A. No. 2:15-cv-00576** |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **AT&T INC.,** | § | |
| **AT&T MOBILITY LLC,** | § | |
| **ALCATEL-LUCENT S.A.,** | § | |
| **ALCATEL-LUCENT USA, INC.,** | § | |
| **ERICSSON INC.,** | § | |
| **TELEFONAKTIEBOLAGET LM ERICSSON,** | § | |
| **APPLE INC.,** | § | |
| **HTC CORPORATION,** | § | |
| **HTC AMERICA, INC.,** | § | |
| **LG ELECTRONICS, INC.,** | § | |
| **LG ELECTRONICS USA, INC.,** | § | |
| **SAMSUNG ELECTRONICS CO. LTD.,** | § | |
| **SAMSUNG ELECTRONICS AMERICA, INC.,** | § | |
| **SAMSUNG TELECOMMUNICATIONS AMERICA LLC,** | § | |
| **ZTE CORPORATION,** | § | |
| **ZTE USA INC., and** | § | |
| **ZTE SOLUTIONS, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Cellular Communications Equipment LLC ("CCE") files this Second Amended

Complaint against  AT&T, Inc., AT&T Mobility LLC, Alcatel-Lucent S.A., Alcatel-Lucent USA,

Inc., Ericsson  Inc.,  Telefonaktiebolaget  LM  Ericsson,  Apple  Inc.,  HTC  Corporation,  HTC

America, Inc., LG Electronics, Inc., LG Electronics USA, Inc., Samsung Electronics Co. Ltd.,

Samsung Electronics America, Inc., Samsung Telecommunications America LLC, ZTE Corporation, ZTE USA Inc., and ZTE Solutions, Inc. (collectively, the "Defendants") for infringement of U.S. Patent No. 8,457,022 ("the '022 patent"), U.S. Patent No. 8,570,957 ("the '957 patent"), U.S. Patent No. 8,867,472 ("the '472 patent"), U.S. Patent No. 8,457,676 ("the '676 patent"), U.S. Patent No. 9,025,590 ("the '590 patent"), and U.S. Patent No. 9,078,262 ("the '262 patent").

**INTRODUCTION**

AT&T proclaims that its 4G LTE cellular network covers over 300 million people.  AT&T competes intensely with other national carriers to win subscribers and requires advanced LTE capabilities and features to do so.  AT&T boasts that its network has the strongest LTE signal, is the most reliable LTE network, and has the fewest dropped calls. (*See* www.att.com/network/en/index.html, as of April 30, 2015.)  The technology of the CCE patents asserted in this Complaint underlies critical features of AT&T's LTE network and allows AT&T to make most efficient use of its extremely valuable wireless spectrum.  This is necessary to compete for customers in a highly competitive market and support as many users as possible while offering them the best possible LTE cellular experience.  AT&T's ability to do so is a direct result of AT&T's infringement of the CCE patents.

AT&T relies upon its suppliers of mobile devices and network equipment, such as those named as defendants in this Complaint, to provide the LTE user equipment and base stations that are specifically designed by AT&T and its suppliers to operate as efficiently as possible using various features of the LTE wireless standards.  In providing, testing, and/or operating the hardware that AT&T utilizes or sells to customers to offer 4G LTE cellular communications, each

of its suppliers, including Alcatel-Lucent, Ericsson, Apple, HTC, LG, Samsung, and ZTE, also infringe the CCE patents that are the subject of this Complaint.

## THE PARTIES

1.      Cellular Communications Equipment LLC is a Texas limited liability company with its principal place of business in Plano, Texas.

2.       AT&T Inc. is a Delaware corporation with its principal place of business in Dallas, Texas. This Defendant may be served with process through its agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.  This Defendant does business in the State of Texas and in the Eastern District of Texas.

3.      AT&T Mobility LLC (with AT&T Inc., collectively "AT&T") is a Delaware limited liability company with its principal place of business in Atlanta, Georgia. This Defendant may be served with process through its agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.  This Defendant does business in the State of Texas and in the Eastern District of Texas.

4.      Alcatel-Lucent S.A. is a corporation organized under the laws of France with its principal place of business in Boulogne-Billancourt, France. On information and belief, this Defendant may be served with process at its principal place of business at 148/152 route de la Reine 92100 Boulogne-Billancourt, France.  This Defendant does business in the State of Texas and in the Eastern District of Texas.

5.      Alcatel-Lucent USA, Inc. (with Alcatel-Lucent S.A., collectively "Alcatel") is a Delaware corporation with its principal place of business in Murray Hill, New Jersey. This Defendant may be served with process through its agent, Prentice Hall Corporation System, 211

E. 7th Street, Suite 620, Austin, TX 78701-3218.  This Defendant does business in the State of Texas and in the Eastern District of Texas.

6.      Ericsson Inc. is a Delaware corporation with its headquarters and principal place of business in Plano, Texas. This Defendant may be served with process through its agent, Capitol Corporate Services, Inc., 800 Brazos, Suite 400, Austin, Texas 78701.  This Defendant does business in the State of Texas and in the Eastern District of Texas.

7.      Telefonaktiebolaget LM Ericsson (with Ericsson Inc., collectively "Ericsson") is a company organized under the laws of Sweden with its principal place of business in Stockholm, Sweden. On information and belief, this Defendant may be served with process at its principal place of business at Torshamnsgatan 21, Kista, 164 83 Stockholm, Sweden.  This Defendant does business in the State of Texas and in the Eastern District of Texas.

8.      Apple Inc. ("Apple") is a California corporation with its principal place of business in Cupertino, California. This Defendant may be served with process through its agent in Texas, CT Corporation System, 1999 Bryan Street, Ste. 900; Dallas, TX 75201-3136.  This Defendant does business in the State of Texas and in the Eastern District of Texas.

9.      HTC Corporation is incorporated under the laws of Taiwan with its principal place of business at 23 Xinghau Road, Taoyuan City, Taoyuan 330, Taiwan, R.O.C. On information and belief, this Defendant may be served with process at its principal place of business at 23 Xinghau Road, Taoyuan City, Taoyuan 330, Taiwan, R.O.C. This Defendant does business in the State of Texas and in the Eastern District of Texas.

10.      HTC America, Inc. (with HTC Corporation, collectively "HTC") is a Washington corporation with its principal place of business at 13920 SE Eastgate Way, Suite 400, Bellevue, Washington 98005. This Defendant may be served with process through its agent in Texas,

National Registered Agents, Inc., 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136. This Defendant does business in the State of Texas and in the Eastern District of Texas.

11.     LG Electronics, Inc. is incorporated under the laws of South Korea with its principal place of business at LG Twin Towers 20, Yeouido-dong, Yeongdeunspo-gu, Seoul 150-721, South Korea. On information and belief, this Defendant may be served with process at its principal place of business at LG Twin Towers 20, Yeouido-dong, Yeongdeunspo-gu, Seoul 150-721, South Korea. This Defendant does business in the State of Texas and in the Eastern District of Texas.

12.     LG Electronics USA, Inc. (with LG Electronics, Inc., collectively "LG") is a Delaware corporation with its principal place of business in Englewood Cliffs, New Jersey. This Defendant may be served with process through its agent, United States Corporation Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218. This Defendant does business in the State of Texas and in the Eastern District of Texas.

13.     Samsung Electronics Co., Ltd. is a corporation organized under the laws of South Korea with its principal place of business located at Samsung Main Building, 250, Taepyeongno 2-ga, Jung-gu, Seoul 100-742, Republic of Korea. On information and belief, this Defendant may be served with process at its principal place of business at Samsung Main Building, 250, Taepyeongno 2-ga, Jung-gu, Seoul 100-742, Republic of Korea. This Defendant does business in the State of Texas and in the Eastern District of Texas.

14.     Samsung Electronics America, Inc. is a New York corporation with its principal place of business in Ridgefield Park, New Jersey. This Defendant may be served with process through its agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. This Defendant does business in the State of Texas and in the Eastern District of Texas.

15.     Samsung Telecommunications America, LLC (with Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., collectively "Samsung") is a Delaware limited liability corporation with its principal place of business in Richardson, Texas. This Defendant may be served with process through its agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701. This Defendant does business in the State of Texas and in the Eastern District of Texas.

16.     ZTE Corporation is a corporation organized and existing under the laws of the People's Republic of China with its principal place of business in ZTE Plaza, Keji Road South, Hi-Tech Industrial Park, Nanshan District, Shenzhen, Guangdong Province, P.R. China 518057. On information and belief, this Defendant may be served with process at its principal place of business at ZTE Plaza, Keji Road South, Hi-Tech Industrial Park, Nanshan District, Shenzhen, Guangdong Province, P.R. China 518057. This Defendant does business in the State of Texas and in the Eastern District of Texas.

17.     ZTE USA Inc. is a New Jersey corporation with its principal place of business in Richardson, Texas. This Defendant may be served with process through its agent, Jing Li, 2425 N Central Expy Suite 323, Richardson, TX 75080. This Defendant does business in the State of Texas and in the Eastern District of Texas.

18.     ZTE Solutions Inc. (with ZTE Corp. and ZTE USA Inc., collectively "ZTE") is a Delaware corporation with its principal place of business in Richardson, Texas. This Defendant may be served with process through its agent, Jing Li, 2425 N Central Expy Suite 323, Richardson, TX 75080. This Defendant does business in the State of Texas and in the Eastern District of Texas.

## JURISDICTION AND VENUE

19.     This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

20.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 1367.

21.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b). On information and belief, each Defendant is deemed to reside in this judicial district, has committed acts of infringement in this judicial district, has purposely transacted business in this judicial district, and/or has regular and established places of business in this judicial district.

22.     On information and belief, each Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to their substantial business in this State and judicial district, including: (A) at least part of their infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from goods sold and services provided to Texas residents.

23.     On information and belief, Defendants have significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this judicial district both proper and convenient for this action.  AT&T, Inc. maintains its corporate headquarters in Dallas, Texas and is the fourth-largest company in Texas (the largest non-oil company). It also maintains a research laboratory in Houston, Texas and operates a company store in Brownwood, Texas, located within the Eastern District of Texas.  AT&T Mobility LLC maintains an innovation facility located in Plano, Texas, within the Eastern District of Texas, a testing laboratory in Austin, Texas, and has a network operations facility in Framer's Branch, Texas.  Texas, in general, is a premier

market for AT&T's LTE network – the technology at issue in this lawsuit.  For example in 2011, AT&T announced that Dallas, Houston and San Antonio would be among the first cities to receive the next generation network.  Additionally, AT&T built and opened a test center and laboratories in Plano, Texas for testing 4G LTE Networks.

24.     Alcatel Lucent S.A. maintains an office in Austin, Texas and operates Alcatel-Lucent University in Plano, Texas, located in the Eastern District of Texas.  Alcatel-Lucent USA maintains an office in San Antonio, Texas.

25.     Ericsson, Inc. maintains an office in Plano, Texas, within this District, and operates a training lab facility in Richardson, Texas.  Telefonaktiebolaget LM Ericsson maintains its North American Regional headquarters in Plano, Texas, within this District, and operates a training lab facility in Richardson, Texas.

26.     Apple, Inc. maintains its Americas Operation Center in Austin, Texas and also operates a microchip design center in Austin, Texas.  Apple, Inc. also operates eighteen retail stores in Texas, including one in Plano, Texas and one in Frisco, Texas, both within the Eastern District of Texas.

27.     HTC America, Inc. maintains an office in Houston, Texas.

28.     LG Electronics USA, Inc. maintains an office in Fort Worth, Texas.  Samsung Electronics Co., Ltd. operates a manufacturing facility in Austin, Texas.

29.     Samsung Electronics America, Inc. maintains an office in Dallas, Texas and a manufacturing facility in Austin, Texas.  Samsung Telecommunications America, LLC maintains its headquarters in Richardson, Texas.

30.     ZTE USA, Inc. and ZTE Solutions, Inc. maintain their headquarters in Richardson, Texas.

31.     Further, Plaintiff CCE is a limited liability company located in Plano, Texas, in the Eastern District of Texas.  CCE is controlled by Acacia Research Group LLC, which maintains its principal place of business in Plano, Texas. CCE's business includes the acquisition and licensing of intellectual property.  Additionally, two of CCE's principals work in Plano, Texas and its relevant documents are available in its offices in Plano, Texas.

## COUNT I

### (INFRINGEMENT OF U.S. PATENT NO. 8,457,022)

32.     CCE incorporates paragraphs 1 through 31 herein by reference.

33.     CCE is the assignee of the '022 patent, entitled "Method and Apparatus for Providing Signaling of Redundancy Versions," with ownership of all substantial rights in the '022 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.  A true and correct copy of the '022 patent is attached as Exhibit A.

34.     The '022 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.  The '022 patent issued from U.S. Patent Application No. 12/564,536 (the "'536 Application").

35.     Defendants AT&T, Alcatel, Ericsson, Apple, HTC, LG, Samsung, and ZTE have and continue to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more  claims of the '022 patent in this judicial district and elsewhere in Texas and the United States without the consent or authorization of CCE, by or through their making, having made, offering for sale, selling, importing, and/or using user equipment for AT&T's LTE network—supplied by Apple, HTC, LG, Samsung, and ZTE—and AT&T's base station equipment—supplied by Alcatel and Ericsson—including, for example: the Apple iPhone 5, Apple iPhone 5c, Apple iPhone 5s, Apple iPhone 6, Apple iPhone 6 Plus, Apple iPad Air, Apple

iPad Air 2, Apple iPad Mini, Apple iPad Mini 2, Apple iPad Mini 3, Apple iPad Mini with Retina Display, Apple iPad with Retina Display (iPad 4), AT&T Trek HD, HTC Desire 610, HTC Desire EYE, HTC First, HTC One (M7), HTC One (M8), HTC One (M8) Windows, HTC One M9, HTC One mini, HTC One VX, HTC One X, HTC One X+ (HTC Era 42), HTC Titan II, HTC Vivid, HTC Windows Phone 8X, HTC Jetstream (Puccini), LG Adrenaline AD600, LG Escape 2, LG Escape P870, LG G Flex, LG G Flex 2, LG G Pad F 8.0, LG G Vista, LG G2, LG G3, LG G3 Vigor, LG G4, LG Nitro HD, LG Optimus G, LG G Pad 7.0 LTE, Samsung ATIV S Neo, Samsung Focus 2, Samsung Galaxy Alpha, Samsung Galaxy Exhilarate, Samsung Galaxy Express, Samsung Galaxy Mega, Samsung Galaxy Mega 2, Samsung Galaxy Note, Samsung Galaxy Note 3, Samsung Galaxy Note 4, Samsung Galaxy Note Edge, Samsung Galaxy Note II, Samsung Galaxy Rugby Pro, Samsung Galaxy S II Skyrocket, Samsung Galaxy S3, Samsung Galaxy S3 mini, Samsung Galaxy S4, Samsung Galaxy S4 Active, Samsung Galaxy S4 mini, Samsung Galaxy S4 Zoom, Samsung Galaxy S5, Samsung Galaxy S5 mini, Samsung Galaxy S6, Samsung Galaxy S6 Active, Samsung Galaxy S6 Edge, Samsung Rugby Smart, Samsung ATIV smart PC 4G LTE 700TC (XE700T1C-HA1US), Samsung GALAXY Note 8.0, Samsung Galaxy Note PRO 12.2, Samsung Galaxy Tab 2 10.1, Samsung Galaxy Tab 3 7.0, Samsung Galaxy Tab 4 (8.0), Samsung Galaxy Tab 4 10.1, Samsung Galaxy Tab 8.9, Samsung Galaxy Tab S 10.5, Samsung Galaxy Tab S 8.4, ZTE Compel, ZTE Overture (Z995),  and ZTE Z998 GoPhone (ZTE Unico LTE), compatible with the AT&T LTE cellular network and made, used, sold, offered for sale, imported or otherwise distributed by or through AT&T and/or its suppliers for use on AT&T's LTE network (the "AT&T User Equipment"); and the Alcatel-Lucent 9768, Alcatel-Lucent 9100 Multi-Standard Base Station, Alcatel-Lucent 9412 eNodeB Compact, Alcatel-Lucent lightRadio 9711, Alcatel-Lucent lightRadio 9712, Alcatel-Lucent 9768, Alcatel-Lucent Evercore LTE 400

PMR, Alcatel-Lucent Multi-Carrier Remote Radio Head, and Ericsson RBS 6000 series, compatible with the AT&T LTE cellular network and made, used, sold, offered for sale, imported, and/or operated by or through AT&T and/or its suppliers for use in AT&T's LTE network (the "AT&T Base Stations"). These devices are collectively referred to as the "AT&T LTE User Equipment and Network Equipment."

36.     Defendants directly infringe the apparatus claims of the '022 patent by making, using, offering to sell, selling, and/or importing the AT&T LTE User Equipment and Network Equipment. Defendants also directly infringe the '022 patent by making, using, selling, offering for sale, and/or importing the AT&T LTE User Equipment and Network Equipment to practice the claimed methods. Defendants are thereby liable for direct infringement.

37.     On information and belief, each Defendant, or an affiliated entity, is a 3rd Generation Partnership Project (or "3GPP") member organization, or is affiliated with a 3GPP member organization. 3GPP solicits identification of standard essential patents, and, through 3GPP, Defendants received actual notice of the standard essential patents at issue here. The '022 patent is one such patent, and Defendants have known of the '022 patent; the '536 Application; and/or the fact that the '022 patent's disclosure would be the subject of patent protection at least as early as December 2012, when it was disclosed to 3GPP via the European Telecommunications Standards Institute ("ETSI," an organizational member of 3GPP). Alternatively, each Defendant has had knowledge of the '022 patent, at least as early as service of this Complaint. *See, e.g.*, *Patent Harbor, LLC v. Dreamworks Animation SKG, Inc.*, No. 6:11-cv-229, 2012 U.S. Dist. LEXIS 114199, at *17 (E.D. Tex. Jul. 27, 2012).

38.     Additionally, Defendants are liable for indirect infringement of the '022 patent because they induce and/or contribute to the direct infringement of the patent by their customers

(including AT&T by its suppliers) and other end users who use the AT&T LTE User Equipment and Network Equipment to practice the claimed methods.  On information and belief, as set forth above, Defendants had knowledge of the '022 patent; the '536 Application; and/or the fact that the '022 patent's disclosure would be the subject of patent protection at least as early as December 2012.  And since that time, Defendants have specifically intended and continue to specifically intend for persons who acquire and use the AT&T LTE User Equipment and Network Equipment, including Defendants' customers (e.g., mobile device users, AT&T, etc.), to use such devices in a manner that infringes  the '022  patent.  In the alternative, Defendants have had knowledge of the '022 patent, at least as early as service of this Complaint.  And since that time, Defendants have specifically intended and continue to specifically intend for persons who acquire and use the AT&T LTE User Equipment and Network Equipment, including Defendants' customers (e.g., mobile device users, AT&T, etc.), to use such devices in a manner that infringes the '022 patent.

39.     Despite having knowledge of the '022 patent, Defendants named in this Count have specifically intended and continue to specifically intend for persons who acquire and use the AT&T LTE User Equipment and Network Equipment, including Defendants' customers (e.g., mobile device users, AT&T, etc.), to use such devices in a manner that infringes  one or more claims of the '022 patent. This  is  evident  when Defendants encourage and instruct customers and other end users in the use and operation of the  AT&T LTE User Equipment and Network Equipment via advertisement and instructional materials.

40.     In particular, despite having knowledge of the '022 patent, Defendants have provided, and continue to provide, instructional materials, such as user guides, owner manuals, and  similar  online  resources  (available  for  example,  via  http://www.att.com/esupport, http://support.apple.com/manuals/,                              http://www.htc.com/us/support/,

http://www.lg.com/us/support/mobile-support,   http://www.samsung.com/us/support/downloads,

http://www.zteusa.com/support_page, and other instructional materials and documentation

provided or made available by Defendants to customers after purchase) that specifically teach the

customers and other end users to use the AT&T LTE User Equipment and Network Equipment in

an infringing manner. By providing such instructions, Defendants know (and have known), or

should know (and should have known), that their actions have, and continue to, actively induce

infringement.

41.     Additionally, Defendants named in this Count know, and have known, that the

AT&T LTE User Equipment and Network Equipment include proprietary hardware components

and software instructions that work in concert to perform specific, intended functions. Such

specific, intended functions, carried out by these hardware and software combinations, are a

material part of the inventions of the '022 patent and are not staple articles of commerce suitable

for substantial non-infringing use.

42.     Specifically, each of the AT&T User Equipment contains at least a baseband

processor implementing, in combination with software instructions, functionality that is

specifically programmed and/or configured to detect start of a system information message

transmission window and to assign a redundancy version sequence at the start of the transmission

window as claimed in the '022 patent.  Upon information and belief, the AT&T User Equipment

contains discrete code that uniquely provides this functionality. The code, which is configured to

control the baseband processor and other components for performing these functions, is a material

part of the inventions of the '022 patent and there is no substantial non-infringing use for this

combination of hardware and software components.

43.     Specifically, each of the AT&T Base Stations contains at least a baseband processor implementing, in combination with software instructions, functionality that is specifically programmed and/or configured to detect start of a system information message transmission window and to assign a redundancy version sequence at the start of the transmission window as claimed in the '022 patent.  Upon information and belief, the AT&T Base Stations contain discrete code that uniquely provides this functionality. The code, which is configured to control the baseband processor and other components for performing these functions, is a material part of the inventions of the '022 patent and there is no substantial non-infringing use for this combination of hardware and software components.

44.     On information and belief, despite having knowledge of the '022 patent and knowledge that they are directly and/or indirectly infringing one or more claims of the '022 patent, Defendants named in this Count have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement; thus, Defendants' infringing activities relative to the '022 patent have been, and continue to be, willful, wanton, and deliberate in disregard of CCE's rights.

45.     On information and belief, AT&T along with its suppliers, Alcatel, Ericsson, Apple, HTC, LG, Samsung, and ZTE,  test, make, use, offer for sale, sell, and/or import the AT&T LTE User Equipment and Network Equipment described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution, sale, and operation of such devices. Accordingly, AT&T, Alcatel, Ericsson, Apple, HTC, LG, Samsung, and ZTE are jointly, severally, or alternatively liable for infringements described in this Count.

46.     CCE has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to CCE in an amount that adequately compensates CCE

for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II

### (INFRINGEMENT OF U.S. PATENT NO. 8,570,957)

47.     CCE incorporates paragraphs 1 through 31 herein by reference.

48.     CCE is the assignee of the '957 patent, entitled "Extension of Power Headroom Reporting and Trigger Conditions," with ownership of all substantial rights in the '957 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.  A true and correct copy of the '957 patent is attached as Exhibit B.

49.     The '957 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.  The '957 patent issued from U.S. Patent Application No. 12/382,920 (the "'920 Application").

50.     Defendants AT&T,  Alcatel, Ericsson, Apple, HTC, LG, Samsung, and ZTE have and continue to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more  claims of the '957 patent in this judicial district and elsewhere in Texas and the United States without the consent or authorization of CCE, by or through their making, having made, offering for sale, selling, importing, and/or  using user equipment for AT&T's LTE network—supplied by Apple, HTC, LG, Samsung, and ZTE—and AT&T's base station equipment—supplied by Alcatel and Ericsson—including, for example: the Apple iPhone 5, Apple iPhone 5c, Apple iPhone 5s, Apple iPhone 6, Apple iPhone 6 Plus, Apple iPad Air, Apple iPad Air 2, Apple iPad Mini, Apple iPad Mini 2, Apple iPad Mini 3, Apple iPad Mini with Retina Display, Apple iPad with Retina Display (iPad 4), AT&T Trek HD, HTC Desire 610, HTC Desire EYE, HTC First, HTC One (M7), HTC One (M8), HTC One (M8) Windows, HTC One M9, HTC

One mini, HTC One VX, HTC One X, HTC One X+ (HTC Era 42), HTC Titan II, HTC Vivid, HTC Windows Phone 8X, HTC Jetstream (Puccini), LG Adrenaline AD600, LG Escape 2, LG Escape P870, LG G Flex, LG G Flex 2, LG G Pad F 8.0, LG G Vista, LG G2, LG G3, LG G3 Vigor, LG G4, LG Nitro HD, LG Optimus G, LG G Pad 7.0 LTE, Samsung ATIV S Neo, Samsung Focus 2, Samsung Galaxy Alpha, Samsung Galaxy Exhilarate, Samsung Galaxy Express, Samsung Galaxy Mega, Samsung Galaxy Mega 2, Samsung Galaxy Note, Samsung Galaxy Note 3, Samsung Galaxy Note 4, Samsung Galaxy Note Edge, Samsung Galaxy Note II, Samsung Galaxy Rugby Pro, Samsung Galaxy S II Skyrocket, Samsung Galaxy S3, Samsung Galaxy S3 mini, Samsung Galaxy S4, Samsung Galaxy S4 Active, Samsung Galaxy S4 mini, Samsung Galaxy S4 Zoom, Samsung Galaxy S5, Samsung Galaxy S5 mini, Samsung Galaxy S6, Samsung Galaxy S6 Active, Samsung Galaxy S6 Edge, Samsung Rugby Smart, Samsung ATIV smart PC 4G LTE 700TC (XE700T1C-HA1US), Samsung GALAXY Note 8.0, Samsung Galaxy Note PRO 12.2, Samsung Galaxy Tab 2 10.1, Samsung Galaxy Tab 3 7.0, Samsung Galaxy Tab 4 (8.0), Samsung Galaxy Tab 4 10.1, Samsung Galaxy Tab 8.9, Samsung Galaxy Tab S 10.5, Samsung Galaxy Tab S 8.4, ZTE Compel, ZTE Overture (Z995),  and ZTE Z998 GoPhone (ZTE Unico LTE), compatible with the AT&T LTE cellular network and made, used, sold, offered for sale, imported or otherwise distributed by or through AT&T and/or its suppliers for use on AT&T's LTE network (the "AT&T User Equipment"); and the Alcatel-Lucent 9768, Alcatel-Lucent 9100 Multi-Standard Base Station, Alcatel-Lucent 9412 eNodeB Compact, Alcatel-Lucent lightRadio 9711, Alcatel-Lucent lightRadio 9712, Alcatel-Lucent 9768, Alcatel-Lucent Evercore LTE 400 PMR, Alcatel-Lucent Multi-Carrier Remote Radio Head, and Ericsson RBS 6000 series, compatible with the AT&T LTE cellular network and made, used, sold, offered for sale, imported, and/or operated by or through AT&T and/or its suppliers for use in AT&T's LTE

network (the "AT&T Base Stations").  These devices are collectively referred to as the "AT&T LTE User Equipment and Network Equipment."

51.     Defendants directly infringe the apparatus claims of the '957 patent by making, using, offering to sell, selling, and/or importing the AT&T LTE User Equipment and Network Equipment. Defendants also directly infringe the '957 patent by making, using, selling, offering for sale, and/or importing the AT&T LTE User Equipment and Network Equipment to practice the claimed methods. Defendants are thereby liable for direct infringement.

52.     On information and belief, each Defendant, or an affiliated entity, is a 3rd Generation Partnership Project (or "3GPP") member organization, or is affiliated with a 3GPP member organization. 3GPP solicits identification of standard essential patents, and, through 3GPP, Defendants received actual notice of the standard essential patents at issue here. The '957 patent is one such patent, and Defendants have known of the '957 patent; the '920 Application; and/or the fact that the '957 patent's disclosure would be the subject of patent protection at least as early as August 2010, when it was disclosed to 3GPP via the European Telecommunications Standards Institute ("ETSI," an organizational member of 3GPP).  Alternatively, each Defendant has had knowledge of the '957 patent, at least as early as service of this Complaint. *See, e.g.*, *Patent Harbor, LLC v. Dreamworks Animation SKG, Inc.*, No. 6:11-cv-229, 2012 U.S. Dist. LEXIS 114199, at *17 (E.D. Tex. Jul. 27, 2012).

53.     Additionally, Defendants are liable for indirect infringement of the '957 patent because they induce and/or contribute to the direct infringement of the patent by their customers (including AT&T by its suppliers) and other end users who use the AT&T LTE User Equipment and Network Equipment to practice the claimed methods.  On information and belief, as set forth above, Defendants had knowledge of the '957 patent; the '920 Application; and/or the fact that the

'957 patent's disclosure would be the subject of patent protection at least as early as August 2010. And since that time, Defendants have specifically intended and continue to specifically intend for persons who acquire and use the AT&T LTE User Equipment and Network Equipment, including Defendants' customers (e.g., mobile device users, AT&T, etc.), to use such devices in a manner that infringes the '957 patent. In the alternative, Defendants have had knowledge of the '957 patent, at least as early as service of this Complaint. And since that time, Defendants have specifically intended and continue to specifically intend for persons who acquire and use the AT&T LTE User Equipment and Network Equipment, including Defendants' customers (e.g., mobile device users, AT&T, etc.), to use such devices in a manner that infringes the '957 patent.

54.     Despite having knowledge of the '957 patent, Defendants named in this Count have specifically intended and continue to specifically intend for persons who acquire and use the AT&T LTE User Equipment and Network Equipment, including Defendants' customers (e.g., mobile device users, AT&T, etc.), to use such devices in a manner that infringes one or more claims of the '957 patent. This is evident when Defendants encourage and instruct customers and other end users in the use and operation of the AT&T LTE User Equipment and Network Equipment via advertisement and instructional materials.

55.     In particular, despite having knowledge of the '957 patent, Defendants have provided, and continue to provide, instructional materials, such as user guides, owner manuals, and similar online resources (available for example, via http://www.att.com/esupport, http://support.apple.com/manuals/,                    http://www.htc.com/us/support/, http://www.lg.com/us/support/mobile-support, http://www.samsung.com/us/support/downloads, http://www.zteusa.com/support_page, and other instructional materials and documentation provided or made available by Defendants to customers after purchase) that specifically teach the

customers and other end users to use the AT&T LTE User Equipment and Network Equipment in an infringing manner. By providing such instructions, Defendants know (and have known), or should know (and should have known), that their actions have, and continue to, actively induce infringement.

56.     Additionally, Defendants named in this Count know, and have known, that the AT&T LTE User Equipment and Network Equipment include proprietary hardware components and software instructions that work in concert to perform specific, intended functions. Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the '957 patent and are not staple articles of commerce suitable for substantial non-infringing use.

57.     Specifically, each of the AT&T User Equipment contains at least a transceiver and a baseband processor implementing, in combination with software instructions, functionality that is specifically programmed and/or configured to determine and transmit a power headroom report with both positive and negative values of power headroom as claimed in the '957 patent. Upon information and belief, the AT&T LTE User Equipment contains discrete code that uniquely provides this functionality. The code, which is configured to control the baseband processor, transceiver, and other components for performing these functions, is a material part of the inventions of the '957 patent and there is no substantial non-infringing use for this combination of hardware and software components.

58.     Specifically, each of the AT&T Base Stations contains at least a transceiver and a baseband processor implementing, in combination with software instructions, functionality that is specifically programmed and/or configured to receive a power headroom report with both positive and negative values of power headroom and allocate radio network resources based on the power

headroom report, as claimed in the '957 patent.  Upon information and belief, the AT&T Base Stations contain discrete code that uniquely provides this functionality. The code, which is configured to control the baseband processor, transceiver, and other components for performing these functions, is a material part of the inventions of the '957 patent and there is no substantial non-infringing use for this combination of hardware and software components.

59.     On information and belief, despite having knowledge of the '957 patent and knowledge that they are directly and/or indirectly infringing one or more claims of the '957 patent, Defendants named in this Count have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement; thus, Defendants' infringing activities relative to the '957 patent have been, and continue to be, willful, wanton, and deliberate in disregard of CCE's rights.

60.     On information and belief, AT&T along with its suppliers, Alcatel, Ericsson, Apple, HTC, LG, Samsung, and ZTE,  test, make, use, offer for sale, sell, and/or import the AT&T LTE User Equipment and Network Equipment described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution, sale, and operation of such devices. Accordingly, AT&T, Alcatel, Ericsson, Apple, HTC, LG, Samsung, and ZTE are jointly, severally, or alternatively liable for infringements described in this Count.

61.     CCE has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to CCE in an amount that adequately compensates CCE for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III

### (INFRINGEMENT OF U.S. PATENT NO. 8,867,472)

62.     CCE incorporates paragraphs 1 through 31 herein by reference.

63.     CCE is the assignee of the '472 patent, entitled "Signalling of Channel Information," with ownership of all substantial rights in the '472 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements. A true and correct copy of the '472 patent is attached as Exhibit C.

64.     The '472 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.  The '472 patent issued from U.S. Patent Application No. 13/637,222, which claims priority to PCT/EP2010/053919 (with U.S. Patent Application No. 13/637,222 the "'222 Application").

65.     Defendants AT&T, Alcatel, Ericsson, Apple, HTC, LG, Samsung, and ZTE have and continue to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more  claims of the '472 patent in this judicial district and elsewhere in Texas and the United States without the consent or authorization of CCE, by or through their making, having made, offering for sale, selling, importing, and/or using user equipment for AT&T's LTE network—supplied by Apple, HTC, LG, Samsung, and ZTE—and AT&T's base station equipment—supplied by Alcatel and Ericsson—including, for example: the Apple iPhone 5, Apple iPhone 5c, Apple iPhone 5s, Apple iPhone 6, Apple iPhone 6 Plus, Apple iPad Air, Apple iPad Air 2, Apple iPad Mini, Apple iPad Mini 2, Apple iPad Mini 3, Apple iPad Mini with Retina Display, Apple iPad with Retina Display (iPad 4), AT&T Trek HD, HTC Desire 610, HTC Desire EYE, HTC First, HTC One (M7), HTC One (M8), HTC One (M8) Windows, HTC One M9, HTC One mini, HTC One VX, HTC One X, HTC One X+ (HTC Era 42), HTC Titan II, HTC Vivid, HTC Windows Phone 8X, HTC Jetstream (Puccini), LG Adrenaline AD600, LG Escape 2, LG Escape P870, LG G Flex, LG G Flex 2, LG G Pad F 8.0, LG G Vista, LG G2, LG G3, LG G3 Vigor, LG G4, LG Nitro HD, LG Optimus G, LG G Pad 7.0 LTE, Samsung ATIV S Neo, Samsung

Focus 2, Samsung Galaxy Alpha, Samsung Galaxy Exhilarate, Samsung Galaxy Express, Samsung Galaxy Mega, Samsung Galaxy Mega 2, Samsung Galaxy Note, Samsung Galaxy Note 3, Samsung Galaxy Note 4, Samsung Galaxy Note Edge, Samsung Galaxy Note II, Samsung Galaxy Rugby Pro, Samsung Galaxy S II Skyrocket, Samsung Galaxy S3, Samsung Galaxy S3 mini, Samsung Galaxy S4, Samsung Galaxy S4 Active, Samsung Galaxy S4 mini, Samsung Galaxy S4 Zoom, Samsung Galaxy S5, Samsung Galaxy S5 mini, Samsung Galaxy S6, Samsung Galaxy S6 Active, Samsung Galaxy S6 Edge, Samsung Rugby Smart, Samsung ATIV smart PC 4G LTE 700TC (XE700T1C-HA1US), Samsung GALAXY Note 8.0, Samsung Galaxy Note PRO 12.2, Samsung Galaxy Tab 2 10.1, Samsung Galaxy Tab 3 7.0, Samsung Galaxy Tab 4 (8.0), Samsung Galaxy Tab 4 10.1, Samsung Galaxy Tab 8.9, Samsung Galaxy Tab S 10.5, Samsung Galaxy Tab S 8.4, ZTE Compel, ZTE Overture (Z995),  and ZTE Z998 GoPhone (ZTE Unico LTE), compatible with the AT&T LTE cellular network and made, used, sold, offered for sale, imported or otherwise distributed by or through AT&T and/or its suppliers for use on AT&T's LTE network (the "AT&T User Equipment"); and the Alcatel-Lucent 9768, Alcatel-Lucent 9100 Multi-Standard Base Station, Alcatel-Lucent 9412 eNodeB Compact, Alcatel-Lucent lightRadio 9711, Alcatel-Lucent lightRadio 9712, Alcatel-Lucent 9768, Alcatel-Lucent Evercore LTE 400 PMR, Alcatel-Lucent Multi-Carrier Remote Radio Head, and Ericsson RBS 6000 series, compatible with the AT&T LTE cellular network and made, used, sold, offered for sale, imported, and/or operated by or through AT&T and/or its suppliers for use in AT&T's LTE network (the "AT&T Base Stations"). These devices are collectively referred to as the "AT&T LTE User Equipment and Network Equipment."

66.     Defendants directly infringe the apparatus claims of the '472 patent by making, using, offering to sell, selling, and/or importing the AT&T LTE User Equipment and Network

Equipment. Defendants also directly infringe the '472 patent by making, using, selling, offering for sale, and/or importing the AT&T LTE User Equipment and Network Equipment to practice the claimed methods. Defendants are thereby liable for direct infringement.

67.     On information and belief, each Defendant, or an affiliated entity, is a 3rd Generation Partnership Project (or "3GPP") member organization, or is affiliated with a 3GPP member organization. 3GPP solicits identification of standard essential patents, and, through 3GPP, the Defendants received actual notice of the standard essential patents at issue here. The '472 patent is one such patent, and the Defendants have known of the '472 patent; the '222 Application; and/or the fact that the '472 patent's disclosure would be the subject of patent protection at least as early as at least as early as March 2013, when it was disclosed to 3GPP via the European Telecommunications Standards Institute ("ETSI," an organizational member of 3GPP). Alternatively, each Defendant has had knowledge of the '472 patent, at least as early as service of this Complaint. *See, e.g.*, *Patent Harbor, LLC v. Dreamworks Animation SKG, Inc.*, No. 6:11-cv-229, 2012 U.S. Dist. LEXIS 114199, at *17 (E.D. Tex. Jul. 27, 2012).

68.     Additionally, Defendants are liable for indirect infringement of the '472 patent because they induce and/or contribute to the direct infringement of the patent by their customers (including AT&T by its suppliers) and other end users who use the AT&T LTE User Equipment and Network Equipment to practice the claimed methods. On information and belief, as set forth above, Defendants had knowledge of the '472 patent; the '222 Application; and/or the fact that the '472 patent's disclosure would be the subject of patent protection at least as early as March 2013. And since that time, Defendants have specifically intended and continue to specifically intend for persons who acquire and use the AT&T LTE User Equipment and Network Equipment, including Defendants' customers (e.g., mobile device users, AT&T, etc.), to use such devices in

a manner that infringes the '472 patent.  In the alternative, Defendants have had knowledge of the '472 patent, at least as early as service of this Complaint.  And since that time, Defendants have specifically intended and continue to specifically intend for persons who acquire and use the AT&T LTE User Equipment and Network Equipment, including Defendants' customers (e.g., mobile device users, AT&T, etc.), to use such devices in a manner that infringes the '472 patent.

69.     Despite having knowledge of the '472 patent, Defendants named in this Count have specifically intended and continue to specifically intend for persons who acquire and use the AT&T LTE User Equipment and Network Equipment, including Defendants' customers (e.g., mobile device users, AT&T, etc.), to use such devices in a manner that infringes one or more claims of the '472 patent. This  is  evident  when Defendants encourage and instruct customers and other end users in the use and operation of the  AT&T LTE User Equipment and Network Equipment via advertisement and instructional materials.

70.     In particular, despite having knowledge of the '472 patent, Defendants have provided, and continue to provide, instructional materials, such as user guides, owner manuals, and  similar  online  resources  (available  for  example,  via  http://www.att.com/esupport, http://support.apple.com/manuals/,                                          http://www.htc.com/us/support/, http://www.lg.com/us/support/mobile-support,   http://www.samsung.com/us/support/downloads, http://www.zteusa.com/support_page, and  other  instructional  materials  and  documentation provided or made available by Defendants to customers after purchase) that specifically teach the customers and other end users to use the AT&T LTE User Equipment and Network Equipment in an infringing manner. By providing such instructions, Defendants know (and have known), or should know (and should have known), that their actions have, and continue to, actively induce infringement.

71.     Additionally, Defendants named in this Count know, and have known, that the AT&T LTE User Equipment and Network Equipment include proprietary hardware components and software instructions that work in concert to perform specific, intended functions. Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the '472 patent and are not staple articles of commerce suitable for substantial non-infringing use.

72.     Specifically, each of the AT&T User Equipment contains at least a transceiver and a baseband processor implementing, in combination with software instructions, functionality that is specifically programmed and/or configured to receive a request for providing aperiodic channel information, determine and send the channel information for the selected downlink component carrier, as claimed in the '472 patent.  Upon information and belief, the AT&T User Equipment contains discrete code that uniquely provides this functionality. The code, which is configured to control the baseband processor, transceiver, and other components for performing these functions, is a material part of the inventions of the '472 patent and there is no substantial non-infringing use for this combination of hardware and software components.

73.     Specifically, each of the AT&T Base Stations contains at least a transceiver and a baseband processor implementing, in combination with software instructions, functionality that is specifically programmed and/or configured to generate and send a request for providing aperiodic channel information for a selected downlink component carrier, as claimed in the '472 patent. Upon information and belief, the AT&T Base Stations contain discrete code that uniquely provides this functionality. The code, which is configured to control the baseband processor, transceiver, and other components for performing these functions, is a material part of the inventions of the

'472 patent and there is no substantial non-infringing use for this combination of hardware and software components.

74.     On information and belief, despite having knowledge of the '472 patent and knowledge that they are directly and/or indirectly infringing one or more claims of the '472 patent, Defendants named in this Count have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement; thus, Defendants' infringing activities relative to the '472 patent have been, and continue to be, willful, wanton, and deliberate in disregard of CCE's rights.

75.     On information and belief, AT&T along with its suppliers, Alcatel, Ericsson, Apple, HTC, LG, Samsung, and ZTE,  test, make, use, offer for sale, sell, and/or import the AT&T LTE User Equipment and Network Equipment described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution, sale, and operation of such devices. Accordingly, AT&T, Alcatel, Ericsson, Apple, HTC, LG, Samsung, and ZTE are jointly, severally, or alternatively liable for infringements described in this Count.

76.      CCE has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to CCE in an amount that adequately compensates CCE for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV

### (INFRINGEMENT OF U.S. PATENT NO. 8,457,676)

77.     CCE incorporates paragraphs 1 through 31 herein by reference.

78.     CCE is the assignee of the '676 patent, entitled "Power Headroom Reporting Method," with ownership of all substantial rights in the '676 patent, including the right to

exclude others and to enforce, sue, and recover damages for past and future infringements. A true and correct copy of the '676 patent is attached as Exhibit D.

79.     The '676 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.  The '676 patent issued from U.S. Patent Application No. 12/665,427, which claims priority to PCT/FI2008/050384 (with U.S. Patent Application No. 13/637,222 the "'427 Application").

80.     Defendants AT&T, Alcatel, Apple, HTC, LG, Samsung, and ZTE ("the '676 Defendants") have and continue to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more  claims of the '676 patent in this judicial district and elsewhere in Texas and the United States without the consent or authorization of CCE, by or through their making, having made, offering for sale, selling, importing, and/or using user equipment for AT&T's LTE network—supplied by Apple, HTC, LG, Samsung, and ZTE—and AT&T's base station equipment—supplied by Alcatel—including, for example: the Apple iPhone 5, Apple iPhone 5c, Apple iPhone 5s, Apple iPhone 6, Apple iPhone 6 Plus, Apple iPad Air, Apple iPad Air 2, Apple iPad Mini, Apple iPad Mini 2, Apple iPad Mini 3, Apple iPad Mini with Retina Display, Apple iPad with Retina Display (iPad 4), AT&T Trek HD, HTC Desire 610, HTC Desire EYE, HTC First, HTC One (M7), HTC One (M8), HTC One (M8) Windows, HTC One M9, HTC One mini, HTC One VX, HTC One X, HTC One X+ (HTC Era 42), HTC Titan II, HTC Vivid, HTC Windows Phone 8X, HTC Jetstream (Puccini), LG Adrenaline AD600, LG Escape 2, LG Escape P870, LG G Flex, LG G Flex 2, LG G Pad F 8.0, LG G Vista, LG G2, LG G3, LG G3 Vigor, LG G4, LG Nitro HD, LG Optimus G, LG G Pad 7.0 LTE, Samsung ATIV S Neo, Samsung Focus 2, Samsung Galaxy Alpha, Samsung Galaxy Exhilarate, Samsung Galaxy Express, Samsung Galaxy Mega, Samsung Galaxy Mega 2, Samsung Galaxy Note, Samsung

Galaxy Note 3, Samsung Galaxy Note 4, Samsung Galaxy Note Edge, Samsung Galaxy Note II,

Samsung Galaxy Rugby Pro, Samsung Galaxy S II Skyrocket, Samsung Galaxy S3, Samsung

Galaxy S3 mini, Samsung Galaxy S4, Samsung Galaxy S4 Active, Samsung Galaxy S4 mini,

Samsung Galaxy S4 Zoom, Samsung Galaxy S5, Samsung Galaxy S5 mini, Samsung Galaxy S6,

Samsung Galaxy S6 Active, Samsung Galaxy S6 Edge, Samsung Rugby Smart, Samsung ATIV

smart PC 4G LTE 700TC (XE700T1C-HA1US), Samsung GALAXY Note 8.0, Samsung Galaxy

Note PRO 12.2, Samsung Galaxy Tab 2 10.1, Samsung Galaxy Tab 3 7.0, Samsung Galaxy Tab 4

(8.0), Samsung Galaxy Tab 4 10.1, Samsung Galaxy Tab 8.9, Samsung Galaxy Tab S 10.5,

Samsung Galaxy Tab S 8.4, ZTE Compel, ZTE Overture (Z995),  and ZTE Z998 GoPhone (ZTE

Unico LTE), compatible with the AT&T LTE cellular network and made, used, sold, offered for

sale, imported or otherwise distributed by or through AT&T and/or its suppliers for use on

AT&T's LTE network (the "AT&T User Equipment"); and the Alcatel-Lucent 9768, Alcatel-

Lucent 9100 Multi-Standard Base Station, Alcatel-Lucent 9412 eNodeB Compact, Alcatel-Lucent

lightRadio 9711, Alcatel-Lucent lightRadio 9712, Alcatel-Lucent 9768, Alcatel-Lucent Evercore

LTE 400 PMR, and Alcatel-Lucent Multi-Carrier Remote Radio Head, compatible with the

AT&T LTE cellular network and made, used, sold, offered for sale, imported, and/or operated

by or through AT&T and/or its suppliers for use in AT&T's LTE network (the "AT&T '676 Base

Stations").  These devices are collectively referred to as the "AT&T '676 LTE User Equipment

and Network Equipment."

81.    The '676 Defendants directly infringe the apparatus claims of the '676 patent by

making, using, offering to sell, selling, and/or importing the AT&T '676 LTE User Equipment and

Network Equipment. The '676 Defendants also directly infringe the '676 patent by making, using,

selling, offering for sale, and/or importing the AT&T '676 LTE User Equipment and Network

Equipment to practice the claimed methods. The '676 Defendants are thereby liable for direct infringement.

82.     On information and belief, each '676 Defendant, or an affiliated entity, is a 3rd Generation Partnership Project (or "3GPP") member organization, or is affiliated with a 3GPP member organization. 3GPP solicits identification of standard essential patents, and, through 3GPP, the '676 Defendants received actual notice of the standard essential patents at issue here. The '676 patent is one such patent, and the '676 Defendants have known of the '676 patent; the '427 Application; and/or the fact that the '676 patent's disclosure would be the subject of patent protection at least as early as December 2012, when it was disclosed to 3GPP via the European Telecommunications Standards Institute ("ETSI," an organizational member of 3GPP). Alternatively, each '676 Defendant has had knowledge of the '676 patent, at least as early as service of this Complaint. *See, e.g.*, *Patent Harbor, LLC v. Dreamworks Animation SKG, Inc.*, No. 6:11-cv-229, 2012 U.S. Dist. LEXIS 114199, at *17 (E.D. Tex. Jul. 27, 2012).

83.     Additionally, the '676 Defendants are liable for indirect infringement of the '676 patent because they induce and/or contribute to the direct infringement of the patent by their customers (including AT&T by its suppliers) and other end users who use the AT&T '676 LTE User Equipment and Network Equipment to practice the claimed methods. On information and belief, as set forth above, the '676 Defendants had knowledge of the '676 patent; the '427 Application; and/or the fact that the '676 patent's disclosure would be the subject of patent protection at least as early as December 2012. And since that time, the '676 Defendants have specifically intended and continue to specifically intend for persons who acquire and use the AT&T '676 LTE User Equipment and Network Equipment, including the '676 Defendants' customers (e.g., mobile device users, AT&T, etc.), to use such devices in a manner that infringes

the '676 patent.  In the alternative, the '676 Defendants have had knowledge of the '676 patent,

at least as early as service  of this Complaint.  And since that time, the '676 Defendants have

specifically intended and continue to specifically intend for persons who acquire and use the

AT&T LTE User Equipment and Network Equipment, including the '676 Defendants' customers

(e.g., mobile device users, AT&T, etc.), to use such devices in a manner that infringes the '676

patent.

84.     Despite having knowledge of the '676 patent, the '676 Defendants named in this

Count have specifically intended and continue to specifically intend for persons who acquire

and  use  the  AT&T '676 LTE User Equipment and Network Equipment, including the '676

Defendants' customers (e.g., mobile device users, AT&T, etc.), to use such devices in a manner

that infringes one or more claims of the '676 patent. This  is  evident when the '676 Defendants

encourage and instruct customers and other end users in the use and operation of the AT&T '676

LTE User Equipment and Network Equipment via advertisement and instructional materials.

85.     In particular, despite having knowledge of the '676 patent, the '676 Defendants

have provided, and continue to provide, instructional materials, such as user guides, owner

manuals, and similar online resources (available for example, via http://www.att.com/esupport,

http://support.apple.com/manuals/,                                              http://www.htc.com/us/support/,

http://www.lg.com/us/support/mobile-support,  http://www.samsung.com/us/support/downloads,

http://www.zteusa.com/support_page,  and  other  instructional  materials  and  documentation

provided or made available by the '676 Defendants to customers after purchase) that specifically

teach the customers and other end users to use the AT&T '676 LTE User Equipment and Network

Equipment in an infringing manner. By providing such instructions, the '676 Defendants know

(and have known), or should know (and should have known), that their actions have, and continue to, actively induce infringement.

86.     Additionally, the '676 Defendants named in this Count know, and have known, that the AT&T '676 LTE User Equipment and Network Equipment include proprietary hardware components and software instructions that work in concert to perform specific, intended functions. Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the '676 patent and are not staple articles of commerce suitable for substantial non-infringing use.

87.     Specifically, each of the AT&T User Equipment contains at least a transceiver and a baseband processor implementing, in combination with software instructions, functionality that is specifically programmed and/or configured to provide a power control headroom report in response to determining that aset of at least one triggering criterion is met, as claimed in the '676 patent. Upon information and belief, the AT&T LTE User Equipment discrete code that uniquely provides this functionality. The code, which is configured to control the baseband processor, transceiver, and other components for performing these functions, is a material part of the inventions of the '676 patent and there is no substantial non-infringing use for this combination of hardware and software components.

88.     Specifically, each of the AT&T '676 Base Stations contains at least a transceiver and a baseband processor implementing, in combination with software instructions, functionality that is specifically programmed and/or configured to receive a power control headroom report in response to the user equipment determining that a set of at least one triggering criterion is met, as claimed in the '676 patent. Upon information and belief, the AT&T '676 Base Stations contain discrete code that uniquely provides this functionality. The code, which is configured to control

the baseband processor, transceiver, and other components for performing these functions, is a material part of the inventions of the '676 patent and there is no substantial non-infringing use for this combination of hardware and software components.

89.     On information and belief, despite having knowledge of the '676 patent and knowledge that they are directly and/or indirectly infringing one or more claims of the '676 patent, Defendants named in this Count have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement; thus, Defendants' infringing activities relative to the '676 patent have been, and continue to be, willful, wanton, and deliberate in disregard of CCE's rights.

90.     On information and belief, AT&T along with its suppliers, Alcatel, Apple, HTC, LG, Samsung, and ZTE, test, make, use, offer for sale, sell, and/or import the AT&T '676 LTE User Equipment and Network Equipment described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution, sale, and operation of such devices. Accordingly, AT&T, Alcatel, Apple, HTC, LG, Samsung, and ZTE are jointly, severally, or alternatively liable for infringements described in this Count.

91.     CCE has been damaged as a result of the '676 Defendants' infringing conduct described in this Count. The '676 Defendants are, thus, liable to CCE in an amount that adequately compensates CCE for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V

### (INFRINGEMENT OF U.S. PATENT NO. 9,025,590)

92.     CCE incorporates paragraphs 1 through 31 herein by reference.

93.     CCE is the assignee of the '590 patent, entitled "Carrier Aggregation with Power Headroom Report," with ownership of all substantial rights in the '590 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.  A true and correct copy of the '590 patent is attached as Exhibit E.

94.     The '590 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

95.     Defendants AT&T, Alcatel, and Ericsson have and continue to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '590 patent in this judicial district and elsewhere in Texas and the United States without the consent or authorization of CCE, by or through their making, having made, offering for sale, selling, importing, and/or using AT&T's base station equipment—supplied by Alcatel and Ericsson—including, for example: the Alcatel-Lucent 9768, Alcatel-Lucent 9100 Multi-Standard Base Station, Alcatel-Lucent 9412 eNodeB Compact, Alcatel-Lucent lightRadio 9711, Alcatel-Lucent lightRadio 9712, Alcatel-Lucent 9768, Alcatel-Lucent Evercore LTE 400 PMR, Alcatel-Lucent Multi-Carrier Remote Radio Head, and Ericsson RBS 6000 series, compatible with the AT&T LTE cellular network and made, used, sold, offered for sale, imported, and/or operated by or through AT&T and/or its suppliers for use in AT&T's LTE network (the "AT&T Base Stations").

96.     Defendants directly infringe the apparatus claims of the '590 patent by making, using, offering to sell, selling, and/or importing the AT&T Base Stations. Defendants also directly infringe the '590 patent by making, using, selling, offering for sale, and/or importing the AT&T Base Stations to practice the claimed methods. Defendants are thereby liable for direct infringement.

97.     Additionally, Defendants are liable for indirect infringement of the '590 patent because they induce and/or contribute to the direct infringement of the patent by their customers (including AT&T by its suppliers) and other end users who use the AT&T Base Stations to practice the claimed methods.  Defendants have specifically intended and continue to specifically intend for persons who acquire and use the AT&T Base Stations, including Defendants' customers (e.g., mobile device users, AT&T, etc.), to use such devices in a manner that infringes the '590 patent.

98.     Each Defendant has had knowledge of the '590 patent, at least as early as service of this Complaint. *See, e.g.*, *Patent Harbor, LLC v. Dreamworks Animation SKG, Inc.*, No. 6:11-cv-229, 2012 U.S. Dist. LEXIS 114199, at *17 (E.D. Tex. Jul. 27, 2012).

99.     Despite having knowledge of the '590 patent, Defendants named in this Count have specifically intended and continue to specifically intend for persons who acquire and use the AT&T Base Stations, including Defendants' customers (e.g., mobile device users, AT&T, etc.), to use such devices in a manner that infringes one or more claims of the '590 patent.  This is evident when Defendants encourage and instruct customers and other end users in the use and operation of the AT&T Base Stations via advertisement and instructional materials.

100.    In particular, despite having knowledge of the '590 patent, Defendants have provided, and continue to provide, instructional materials, such as user guides, owner manuals, and similar online resources (available for example, via http://www.att.com/esupport and other instructional materials and documentation provided or made available by Defendants to customers after purchase) that specifically teach the customers and other end users to use the AT&T Base Stations in an infringing manner. By providing such instructions, Defendants know (and have known), or should know (and should have known), that their actions have, and continue to, actively induce infringement.

101.    Additionally, Defendants named in this Count know, and have known, that the AT&T Base Stations include proprietary hardware components and software instructions that work in concert to perform specific, intended functions. Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the '590 patent and are not staple articles of commerce suitable for substantial non-infringing use.

102.    Specifically, each of the AT&T Base Stations contains at least a transceiver and a baseband processor implementing, in combination with software instructions, functionality that is specifically programmed and/or configured to configure a user equipment to send a power headroom report control element including a bitmap that indicates power headroom reports being reported and receive and process the power headroom report control element, as claimed in the '590 patent.  Upon information and belief, the AT&T Base Stations contain discrete code that uniquely provides this functionality. The code, which is configured to control the baseband processor, transceiver, and other components for performing these functions, is a material part of the inventions of the '590 patent and there is no substantial non-infringing use for this combination of hardware and software components.

103.    On information and belief, AT&T along with its suppliers, Alcatel and Ericsson, test, make, use, offer for sale, sell, and/or import the AT&T Base Stations described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution, sale, and operation of such devices. Accordingly, AT&T, Alcatel, and Ericsson are jointly, severally, or alternatively liable for infringements described in this Count.

104.    CCE has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to CCE in an amount that adequately compensates CCE for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together

with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI

### (INFRINGEMENT OF U.S. PATENT NO. 9,078,262)

105.    CCE incorporates paragraphs 1 through 31 herein by reference.

106.    CCE is the assignee of the '262 patent, entitled "Signalling of Channel Information," with ownership of all substantial rights in the '262 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements. A true and correct copy of the '262 patent is attached as Exhibit F.

107.    The '262 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

108.    Defendants AT&T, Alcatel, and Ericsson have and continue to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '262 patent in this judicial district and elsewhere in Texas and the United States without the consent or authorization of CCE, by or through their making, having made, offering for sale, selling, importing, and/or using AT&T's base station equipment—supplied by Alcatel and Ericsson—including, for example: the Alcatel-Lucent 9768, Alcatel-Lucent 9100 Multi-Standard Base Station, Alcatel-Lucent 9412 eNodeB Compact, Alcatel-Lucent lightRadio 9711, Alcatel-Lucent lightRadio 9712, Alcatel-Lucent 9768, Alcatel-Lucent Evercore LTE 400 PMR, Alcatel-Lucent Multi-Carrier Remote Radio Head, and Ericsson RBS 6000 series, compatible with the AT&T LTE cellular network and made, used, sold, offered for sale, imported, and/or operated by or through AT&T and/or its suppliers for use in AT&T's LTE network (the "AT&T Base Stations").

109.    Defendants directly infringe the apparatus claims of the '262 patent by making, using, offering to sell, selling, and/or importing the AT&T Base Stations. Defendants also directly

infringe the '262 patent by making, using, selling, offering for sale, and/or importing the AT&T Base Stations to practice the claimed methods. Defendants are thereby liable for direct infringement.

110.    Additionally, Defendants are liable for indirect infringement of the '262 patent because they induce and/or contribute to the direct infringement of the patent by their customers (including AT&T by its suppliers) and other end users who use the AT&T Base Stations to practice the claimed methods. Defendants have specifically intended and continue to specifically intend for persons who acquire and use the AT&T Base Stations, including Defendants' customers (e.g., mobile device users, AT&T, etc.), to use such devices in a manner that infringes the '262 patent.

111.    Each Defendant has had knowledge of the '262 patent, at least as early as service of this Complaint. *See, e.g.*, *Patent Harbor, LLC v. Dreamworks Animation SKG, Inc.*, No. 6:11-cv-229, 2012 U.S. Dist. LEXIS 114199, at *17 (E.D. Tex. Jul. 27, 2012).

112.    Despite having knowledge of the '262 patent, Defendants named in this Count have specifically intended and continue to specifically intend for persons who acquire and use the AT&T Base Stations, including Defendants' customers (e.g., mobile device users, AT&T, etc.), to use such devices in a manner that infringes one or more claims of the '262 patent. This is evident when Defendants encourage and instruct customers and other end users in the use and operation of the AT&T Base Stations via advertisement and instructional materials.

113.    In particular, despite having knowledge of the '262 patent, Defendants have provided, and continue to provide, instructional materials, such as user guides, owner manuals, and similar online resources (available for example, via http://www.att.com/esupport and other instructional materials and documentation provided or made available by Defendants to customers after purchase) that specifically teach the customers and other end users to use the AT&T Base

Stations in an infringing manner. By providing such instructions, Defendants know (and have known), or should know (and should have known), that their actions have, and continue to, actively induce infringement.

114.    Additionally, Defendants named in this Count know, and have known, that the AT&T Base Stations include proprietary hardware components and software instructions that work in concert to perform specific, intended functions. Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the '262 patent and are not staple articles of commerce suitable for substantial non-infringing use.

115.    Specifically, each of the AT&T Base Stations contains at least a transceiver and a baseband processor implementing, in combination with software instructions, functionality that is specifically programmed and/or configured to generate and send a request for providing aperiodic channel information for a selected downlink component carrier, as claimed in the '262 patent. Upon information and belief, the AT&T Base Stations contain discrete code that uniquely provides this functionality. The code, which is configured to control the baseband processor, transceiver, and other components for performing these functions, is a material part of the inventions of the '262 patent and there is no substantial non-infringing use for this combination of hardware and software components.

116.    On information and belief, AT&T along with its suppliers, Alcatel and Ericsson, test, make, use, offer for sale, sell, and/or import the AT&T Base Stations described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution, sale, and operation of such devices. Accordingly, AT&T, Alcatel, and Ericsson are jointly, severally, or alternatively liable for infringements described in this Count.

117.    CCE has been damaged as a result of Defendants' infringing conduct described

in this Count. Defendants are, thus, liable to CCE in an amount that adequately compensates CCE for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JOINDER OF PARTIES

118.    CCE incorporates paragraphs 1 through 116 herein by reference.

119.    On information and belief, AT&T has purchased or otherwise acquired from Alcatel, Ericsson, Apple, HTC, LG, Samsung, and ZTE certain mobile devices and/or base station equipment for sale, resale, distribution to their customers (and other end users), and/or use in their cellular communications networks for the benefit of their customers (and other end users), that are the subject of Counts I through VI (or some subset thereof). Thus, for these Counts, the right to relief against Alcatel, Ericsson, Apple, HTC, LG, Samsung, and ZTE is asserted jointly and severally with AT&T.

120.    The alleged infringements set forth in Counts I through VI arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the testing, making, using, offering for sale, selling, and/or importing of the AT&T devices and equipment made the subject of Counts I through VI.

121.    Questions of fact common to all Defendants will arise in this action including, for example, infringement by, or through use of, AT&T devices and equipment.

122.    Thus, joinder of AT&T, Alcatel, Ericsson, Apple, HTC, LG, Samsung, and ZTE is proper in this litigation pursuant to 35 U.S.C. § 299(a).

## JURY DEMAND

CCE hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

CCE requests that the Court find in its favor and against Defendants, and that the Court grant CCE the following relief:

a.  Judgment that one or more claims of the '022, '957, '472, '676, '590, and '262 patents have been infringed, either literally and/or under the doctrine of equivalents, by Defendants and/or by others whose infringements have been induced by Defendants and/or by others to whose infringements Defendants have contributed;

b.  Judgment that Defendants account for and pay to CCE all damages to and costs incurred by CCE because of Defendants' infringing activities and other conduct complained of herein;

c.  Judgment that Defendants account for and pay to CCE a reasonable, ongoing, post-judgment royalty because of Defendants' infringing activities and other conduct complained of herein;

d.  That Defendants' infringements relative to the '022, '957, '472, and/or '676 patents be found willful from the time that Defendants became aware of the infringing nature of their products, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  That CCE be granted pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein; and

f.  That CCE be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: November 6, 2015                    Respectfully submitted,

                                           /s/ *Jeffrey R. Bragalone*
                                           Jeffrey R. Bragalone (lead attorney)
                                           Texas Bar No. 02855775
                                           Monte Bond
                                           Texas Bar No. 02585625
                                           Terry A. Saad
                                           Texas Bar No. 24066015

                                           **Bragalone Conroy PC**
                                           2200 Ross Avenue
                                           Suite 4500W

Dallas, TX 75201
Tel: (214) 785-6670
Fax: (214) 785-6680
jbragalone@bcpc-law.com
mbond@bcpc-law.com
tsaad@bcpc-law.com

Edward R. Nelson, III
ed@nelbum.com
Texas Bar No. 00797142
S. Brannon Latimer
brannon@nelbum.com
Texas Bar No. 24060137
Thomas C. Cecil
tom@nelbum.com
Texas Bar No. 24069489
NELSON BUMGARDNER, P.C.
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
Phone: (817) 377-9111
Fax: (817) 377-3485

Claire Abernathy Henry
claire@wsfirm.com
Texas Bar No. 24053063
Thomas John Ward, Jr.
jw@wsfirm.com
Texas Bar No. 00794818
Ward, Smith & Hill, PLLC
PO Box 1231
1127 Judson Road, Suite 220
Longview, Texas 75606
Phone: (903) 757-6400
Fax: (903) 757-2323

Attorneys for Plaintiff
**CELLULAR COMMUNICATIONS
EQUIPMENT LLC**